U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2019 JAN -8 PM 1:04

CLERK

BY ⟨signature⟩
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

KEVIN ELNICKI, )
)
Plaintiff, )
)
v. ) Case No. 2:17-cv-00048
)
CITY OF RUTLAND, VERMONT and )
RUTLAND CITY POLICY OFFICER )
RYAN ASHE, )
)
Defendants. )

## OPINION AND ORDER
## GRANTING IN PART AND DENYING IN PART
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
(Doc. 23)

Plaintiff Kevin Elnicki brings this action against Rutland City Police Officer Ryan Ashe and the City of Rutland (the "City") (collectively, "Defendants") and asserts claims of excessive force under the Fourth and Fourteenth Amendments and 42 U.S.C. § 1983 and municipal liability. He alleges that during a December 20, 2016 traffic stop, Officer Ashe approached his driver's side window with his firearm drawn, yelled obscenities, forcibly removed Plaintiff from the truck, and "slam[med] him to the frozen" ground, causing him "specific and serious physical . . . pain and suffering[.]" (Doc. 1 at 4, ¶ 16.)

Pending before the court is Defendants' motion for summary judgment contending that Officer Ashe's use of force was reasonable and as a result the City has no liability because there was no underlying constitutional violation.[1] On June 25, 2018, Plaintiff

---

[1] Defendants make no argument that the right at issue is not clearly established. Although they raised qualified immunity as an affirmative defense in their Answer, they do not argue that Officer Ashe is entitled to summary judgment on that basis. Nonetheless, whether there is a constitutional violation is one prong of the two-pronged qualified immunity analysis. *See Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010) ("[W]hen a defendant official invokes qualified immunity as a defense in order to support a motion for summary judgment, a court must consider two questions: (1) whether the evidence, viewed in the light most favorable to the plaintiff,

opposed the motion. On June 28, 2018, Defendants filed their reply, at which time the court took the motion under advisement.

Plaintiff is represented by Matthew G. Hart, Esq. Kaveh S. Shahi, Esq. represents Defendants.

## I. The Undisputed Facts.

On December 20, 2016, Plaintiff was driving a Kenworth three-axel flatbed truck with a forty-yard roll-off waste container northbound on Route 7 in Rutland City, Vermont. Plaintiff's truck had full length mirrors and other mirrors. At that time, Officer Ashe was parked near Mac's Convenience Store on North Street Extension in a white Ford Crown Victoria which was equipped with emergency lights on the grille, front dashboard, and mirrors, but which did not have rooftop emergency lights or a dashboard video camera. As a result, Officer Ashe's pursuit of Plaintiff's truck and their initial contact was not video recorded.

Using a speed detection system, Officer Ashe determined Plaintiff was traveling in excess of forty-five miles per hour, approximately ten miles per hour over the posted speed limit. Officer Ashe activated his lights and pursued Plaintiff on Route 7, activating his siren after approximately 500 feet. Other vehicles pulled over but Plaintiff did not. Officer Ashe utilized three different sirens and his air horn to effectuate the stop. At 3:02:12, Officer Ashe radioed dispatch that he was attempting to stop a truck that was leaving Rutland City. He radioed again at 3:02:20 that he was still attempting to stop Plaintiff's truck.

As he was driving northbound on Route 7 past Williams Farm, Plaintiff observed southbound traffic pulling over and noticed a "little white car" with "a little blue light" behind his truck. (Doc. 30-1 at 43.) Plaintiff stated at his deposition that he did not "know if there's been an accident or what's going on. So I look for a safe spot and I pull

---

makes out a violation of a statutory or constitutional right, and (2) whether that right was clearly established at the time of the alleged violation."); *see also O'Brien v. Barrows*, 2013 WL 486655, at *5 (D. Vt. Feb. 7, 2013) ("Answering either prong in the negative will bar suit against the official.") (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)).

into Thomas's farm." *Id.* Plaintiff contends that as soon as he saw Officer Ashe's flashing blue lights, he began looking for a place to pull over. He stated that he observed two or three vehicles ahead of him in the northbound lane pull over in the Thomas Dairy parking lot. He alternatively testified that he first saw the emergency vehicle's blue lights behind him before noticing other cars pulling over. The radio log indicates that Plaintiff pulled over at 3:03:44, after Officer Ashe had been pursuing Plaintiff for approximately 2.6 miles.

Upon exiting his vehicle, Officer Ashe removed his firearm from its holster and approached the driver's side of the truck. Officer Ashe contends that he yelled at the driver to show his hands, but he did not initially get a response. He therefore "called out again, using foul language to get his attention." (Doc. 23 at 3.) Plaintiff stated that the first thing he saw after stopping was "a police officer with a[] . . . gun pointed at" him. (Doc. 30-1 at 57.) Plaintiff rolled down his window and heard Officer Ashe "screaming and swearing for [him] to show his hands." (Doc. 30 at 2.)

When Officer Ashe reached Plaintiff's vehicle, he "pull[ed] and snap[ped] Plaintiff's] hands down and through the open window[,]" cursed and shouted at him, and instructed Plaintiff to exit the vehicle. *Id.* Plaintiff initially argued with Officer Ashe and failed to comply with his order to step out of the truck, at which point Officer Ashe opened Plaintiff's door, grabbed Plaintiff's arm, and forcibly removed him from the truck. Plaintiff stated that Officer Ashe "almost broke [his] wrist, snapping [his] wrist on top of the bottom of the window" and that Officer Ashe was "carrying on about shooting [him.]" (Doc. 30-1 at 57.) When Plaintiff was outside of his vehicle, Plaintiff alleges that Officer Ashe unsuccessfully attempted to force him to the ground with a foot sweep.

Once Officer Ashe determined that the scene was secure, Plaintiff was permitted to reenter his truck to obtain his license, registration, and proof of insurance. Officer Ashe returned to his cruiser to verify Plaintiff's information and issue traffic tickets while Plaintiff remained in his truck. The civil violation tickets charged Plaintiff with (1) exceeding the local speed limit, in violation of 23 V.S.A. § 1007; (2) failing to obey an officer, in violation of 23 V.S.A. § 1012(b); and (3) operating a vehicle on approach of

3

a law enforcement vehicle, in violation of 23 V.S.A. § 1050. After receiving the tickets, Plaintiff drove away.

At 3:03:48, about four seconds after Plaintiff stopped his truck, Rutland Police Officer Klementowski began driving toward the Thomas Dairy parking lot in order to assist Officer Ashe. While Officer Klementowski was en route, one minute and eight seconds from Officer Ashe's dispatch that Plaintiff had stopped his truck, Officer Ashe reported at 3:04:52 that the situation was "secure." (Doc. 23 at 3) (internal quotation marks omitted). Officer Klementowski arrived approximately two minutes later at 3:06:42, at which time the video from her cruiser shows Plaintiff inside of his truck.

Prior to his employment with the Rutland City Police Department, Officer Ashe was employed as a police officer by the Hoosick Falls Police Department in New York from 2007 to 2011. During that time, he did not have any disciplinary issues. *See* Doc. 30-2 at 12 ("Q. Did you have any police disciplinary actions against you while you were at the Hoosick Falls Police Department? A. No, I did not. Q. Any complaints about you while you were serving at the Hoosick Falls Police Department? A. No.").

In 2013, after his transfer to the Glens Falls, New York Police Department, Officer Ashe was disciplined for using profane language with an intoxicated driver who struck his police cruiser. He was also disciplined for taking his girlfriend to a shooting range owned by Glens Falls while he was off-duty. Officer Ashe stated at his deposition:

> Q. We'll break it down by years. During the year when you were hired [by the Rutland Police Department], from March 2014 to we'll say the end of February 2015, did you ever have to draw your service pistol?
>
> A. Yes, I did.
>
> Q. How many times did you do that?
>
> A. I would say more than a handful.
>
> Q. What necessitated that?
>
> A. Specific cases; I don't remember off the top of my head. I can remember there was a subject with knives, subject with guns, there was a couple of vehicle pursuits.
>
> . . .

> Q. So did you have any complaints filed against you from March 2014 through the end of February 2015?
>
> A. No.
>
> Q. Any disciplinary actions?
>
> A. No.
>
> Q. Now, going from what would be March of 2016 to the end of February 2017 did you have to draw your service pistol for any reason?
>
> A. Yes.
>
> Q. Okay. And, again, the same question: How many times?
>
> A. I would say similar to the last event.
>
> Q. More than a handful?
>
> A. Correct.

*Id.* at 28-30.

## II. The Disputed Facts.

Defendants concede that "[t]here are disputed facts concerning what happened during the approximately one minute and eight seconds between the truck coming to a stop at Thomas Dairy and Officer Ashe reporting that the situation was secure." (Doc. 23 at 3.) More specifically, the parties dispute the time at which Plaintiff saw Officer Ashe's emergency lights which were not on the top of his vehicle but were located inside an unmarked car.[2] They also dispute the duration of time that Officer Ashe brandished his firearm, where it was pointed, and at what point he holstered it. Defendants contend that Officer Ashe approached Plaintiff's truck with his pistol out of the holster at "low-ready-pointing down," and that he holstered his firearm when he saw Plaintiff's hands through the driver's side window. *Id.* Although inconsistent on this point, according to

---

[2] Plaintiff's response in opposition to the motion for summary judgment contains both disputed factual contentions and supplemental information interspersed with legal arguments. Pursuant to Vermont Local Rule 56(b), "[a] party opposing summary judgment . . . must provide a separate, concise statement of disputed material facts." Although he failed to comply with Local Rule 56, the facts presented in Plaintiff's filing are relevant to the court's analysis of Defendants' motion and Defendants have not moved to strike them. The court will therefore consider them in resolving the motion. *See Rotman v. Progressive Ins. Co.*, 955 F. Supp. 2d 272, 276 (D. Vt. 2013) (noting that the court may consider "any additional facts that [are] both integral to the parties' arguments and undisputed.").

5

Plaintiff, Officer Ashe's firearm was still drawn and pointed at him while Officer Ashe physically removed Plaintiff from the truck until just prior to Officer Ashe's unsuccessful attempt to take Plaintiff to the ground with a foot sweep.

There is scant evidence regarding whether and how Plaintiff came to be placed on the ground and the nature and extent of his alleged injuries. Although Plaintiff alleges in his Complaint that "Officer Ashe . . . proceed[ed] to forcibly remove Mr. Elnicki from his elevated truck cab, causing Mr. Elnicki to slam to the frozen ground where he was pinned, causing pain and injury to Mr. Elnicki[,]" Plaintiff testified that, after he exited his truck and stood on the ground, Officer Ashe "trie[d] to foot sweep me, [but] he didn't take me down." (Doc. 30-1 at 57.) He clarified that Officer Ashe "hit[] [his left] leg . . . [b]elow the knee[,]" but acknowledged that he remained standing. *Id.* at 103; *see also id.* at 102 ("Q. And when he tries doing [the foot sweep], what happens to you; do you just stand there and take the blow? A. I take the blow. Q. Did you fall? A. Didn't even move."). Officer Ashe testified that he did not try to take Plaintiff down to the ground with a foot sweep. *See* Doc. 30-2 at 52 ("Q. At any time did you try to take Mr. Elnicki to the ground? A. No.").

The parties also disagree as to the extent and nature of Officer Ashe's disciplinary history. Plaintiff argues "Officer Ashe had previously been reprimanded by his prior employer at Glens Falls Police Department for being both physically and verbally abusive to civilians he was arresting." (Doc. 30 at 2.) Plaintiff, however, cites no evidence in support of this claim. Although Plaintiff asserts that Officer Ashe's deposition testimony establishes that he "also has a history of drawing his service pistol . . . so[] many times [that he] can't even accurately recall how many times he has drawn his service pistol and pointed [it] at an individual in the few years he has worked for Rutland City[,]" *id.*, Defendants point out that Officer Ashe has not had any disciplinary issues while employed by the Rutland Police Department and that he improperly removed his firearm from its holster only "a handful of times[.]" (Doc. 32 at 6.)

6

## III. Conclusions of Law and Analysis.

### A. Standard of Review.

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' . . . if it 'might affect the outcome of the suit under the governing law.'" *Rodriguez v. Vill. Green Realty, Inc.*, 788 F.3d 31, 39 (2d Cir. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A dispute of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* at 39-40 (quoting *Anderson*, 477 U.S. at 248).

The court "constru[es] the evidence in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in his favor." *McElwee v. Cty. of Orange*, 700 F.3d 635, 640 (2d Cir. 2012). The moving party always "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).

"Once the moving party demonstrates that there are no genuine issues of material fact, the nonmoving party must come forth with evidence sufficient to allow a reasonable jury to find in [its] favor." *Spinelli v. City of New York*, 579 F.3d 160, 166 (2d Cir. 2009) (internal quotation marks omitted). "Thus, a nonmoving party can defeat a summary judgment motion only by coming forward with evidence that would be sufficient, if all reasonable inferences were drawn in [its] favor, to establish the existence of [an] element at trial." *Id.* at 166-67 (internal quotation marks omitted). There is no genuine dispute where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party[.]" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether

7

[she] is ruling on a motion for summary judgment or for a directed verdict." *Anderson*, 477 U.S. at 255.

In general, summary judgment is inappropriate where, as here, there are disputed issues of material fact about what transpired during the alleged acts of excessive force and virtually no evidence regarding the extent of any injuries. *See Griffin v. Crippen*, 193 F.3d 89, 91 (2d Cir. 1999) (finding dismissal of an excessive force claim that was "weak" and supported by "extremely thin" evidence inappropriate where there were "genuine issues of material fact concerning what transpired"); *Carnelli v. Karani*, 2017 WL 6398183, at *14 (D. Vt. Aug. 21, 2017) (denying motion for summary judgment where there were "genuine issues of material fact that must be resolved"); *see also Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 123 (2d Cir. 2004) ("Given the fact-specific nature of the inquiry, granting summary judgment against a plaintiff on an excessive force claim is not appropriate unless no reasonable factfinder could conclude that the officers' conduct was objectively unreasonable."). The court may thus determine the pending motion only to the extent controlling precedent permits the court to decide the issue as a matter of law.

### B. Whether Officer Ashe's Use of Force was Excessive (Count One).

To prevail on a claim of excessive force brought under 42 U.S.C. § 1983, Plaintiff must establish (1) actions taken under color of law; (2) a deprivation of a constitutional or statutory right; (3) causation; and (4) damages. *See Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008); *Hollander v. Copacabana Nightclub*, 624 F.3d 30, 33 (2d Cir. 2010).

Plaintiff contends that Officer Ashe's conduct during the traffic stop was an excessive and unreasonable show and use of force in response to a minor traffic violation. For the purposes of their pending motion, Defendants ask the court to accept Plaintiff's version of the facts. *See* Doc. 23 at 5 ("There are numerous inconsistencies in Mr. Elnicki's testimony but for the purpose of this motion, the events that took place during approximately a minute are disputed and defendants' arguments are therefore based on Mr. Elnicki's version.").

"[A]*ll* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard[.]" *Graham v. Connor*, 490 U.S. 386, 388, 395 (1989). The court's determination of reasonableness at the summary judgment stage must be made from the "perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396 (citing *Terry v. Ohio*, 392 U.S. 1, 20-22 (1968)). In this context, the question is whether an officer's actions were "objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397. The "calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396-97. In reviewing such a claim, the court considers "the totality of the circumstances, . . . including the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of others[,] and whether he is actively resisting arrest." *Sullivan v. Gagnier*, 225 F.3d 161, 165 (2d Cir. 2000).

"'Not every push or shove'" is excessive, *Graham*, 490 U.S. at 396 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)), and "*de minimis* uses of force generally do not suffice to state a constitutional claim[.]" *Griffin*, 193 F.3d at 92. Nonetheless, "courts in this circuit have repeatedly allowed excessive force claims to stand where the plaintiff sustained only minor injuries." *Adedeji v. Holder*, 935 F. Supp. 2d 557, 567 (E.D.N.Y. 2013) (collecting cases); *see also Maxwell v. City of New York*, 380 F.3d 106, 108 (2d Cir. 2004) (recognizing the Second Circuit has "permitted a plaintiff's claim to survive summary judgment on allegations that, during the course of an arrest, a police officer twisted her arm, 'yanked' her, and threw her up against a car, causing only bruising"); *Burwell v. Peyton*, 131 F. Supp. 3d 268, 297 n.23 (D. Vt. 2015) (rejecting defendants' claim that they were entitled to judgment as a matter of law because "any injury Plaintiff suffered was *de minimis*[]" or "'insufficiently serious'"

9

where "Plaintiff was pepper sprayed twice, beaten with multiple strikes of a baton, and suffered a laceration which required stitches and caused scarring.").

In this case, there is no evidence that Plaintiff posed a threat of death or serious bodily injury to Officer Ashe or that Officer Ashe perceived that he posed such a threat. *See O'Bert ex rel. Estate of O'Bert v. Vargo*, 331 F.3d 29, 36 (2d Cir. 2003) ("It is not objectively reasonable for an officer to use deadly force to apprehend a suspect unless the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others."); *see also Maxwell*, 380 F.3d at 109 (vacating summary judgment in officer's favor where plaintiff alleged use of force during her arrest "was sufficient to send pain into her arm and lower back and leave her with a post-concussive syndrome[]" and discrepancies in plaintiff's statements regarding whether the officer caused her to hit her head "left an ambiguity" that "a jury should assess").

Plaintiff and Defendants offer materially different accounts of Officer Ashe's use of his firearm. Examining the evidence in the light most favorable to Plaintiff, even assuming Officer Ashe brandished his firearm and pointed it at Plaintiff throughout the encounter, this *show* of force without *use* of force is insufficient to establish a constitutional violation. *See Dunkelberger v. Dunkelberger*, 2015 WL 5730605, at *15 (S.D.N.Y. Sept. 30, 2015) ("[T]he vast majority of cases within the Second Circuit hold that merely drawing weapons when effectuating an arrest does not constitute excessive force as a matter of law").[3]

With respect to Officer Ashe's physical contact with Plaintiff, the undisputed facts indicate that Officer Ashe grabbed Plaintiff's arm after asking him to exit the vehicle—an order with which Plaintiff failed to immediately comply. "This minor escalation in force

---

[3] *See also Evans v. Plummer*, 687 F. App'x 434, 442 (6th Cir. 2017) (stating the Sixth Circuit "has never found that pointing a taser, as opposed to actually discharging one, constitutes the use of excessive force.") (footnote omitted); *Hinojosa v. City of Terrell*, 834 F.2d 1223, 1230 (5th Cir. 1988) ("Our review of the record fails to reveal any evidence that [the officer's] mere pointing of the gun was grossly disproportionate to the need for action under the circumstances.").

was objectively reasonable in light of clear evidence that a mere verbal request would not suffice." *Brayshaw v. City of Burlington*, 2015 WL 1523019, at *10 (D. Vt. Apr. 3, 2015); *see also Othman v. City of New York*, 2018 WL 1701930, at *6 (E.D.N.Y. Mar. 31, 2018) (concluding officers who pulled plaintiff from his vehicle after plaintiff ignored numerous requests to exit did not use excessive force and stating "[w]hen a suspect evinces unwillingness to exit his vehicle after being requested to do so by a police officer, the officer may have cause to forcibly remove the suspect from his vehicle").

There is no evidence that Officer Ashe believed Plaintiff was armed or that he was responding to anything other than a traffic violation. In Vermont, "[a] traffic violation is not a crime and shall be treated as a civil action." 23 V.S.A. § 2302(b). Moreover, there is no evidence that Plaintiff was engaging in any form of high speed chase. *Cf. Galipeau v. Stemp*, 2016 WL 3190659, at *13 (D. Vt. June 6, 2016) (concluding "serious crimes had been committed, including attempting to elude a law enforcement officer," where plaintiff attempted to flee from a traffic stop and "exceeded the speed limit, failed to stop at multiple stop signs, drove on the sidewalk, and struck a . . . bench" before exiting his vehicle and running from police); *MacLeod v. Town of Brattleboro*, 2012 WL 1928656, at *6 (D. Vt. May 25, 2012) (concluding governmental interests were significant where, "[w]hile it was still dark outside and visibility was limited, Plaintiff traveled in excess of the posted speed limit on wet roads through several intersections including one with a red light with other vehicles and possibly pedestrians present" and actively resisted arrest "in a public parking lot of a fast food restaurant where customers could be expected to be present at all hours of the day").

What happened after Plaintiff left his vehicle is contested. Accepting Plaintiff's version of the events, Officer Ashe "almost broke [Plaintiff's] wrist," there "was a snap, it hit, it hurt, and it was severe[,]"and Officer Ashe struck Plaintiff's leg in an unsuccessful attempt to bring him to the ground with a foot sweep. (Doc. 30-1 at 57, 78.) Although a close question, in the context of the totality of the circumstances, a rational juror could find such force excessive in response to the governmental interests at stake and the severity of the offense under investigation.

Where "there is a dispute concerning the amount of force used and the reasonableness of the force used, the matter becomes a question of fact for a jury to decide." *Frederique v. Cty. of Nassau*, 168 F. Supp. 3d 455, 472 (E.D.N.Y. 2016); *see Harwe v. Floyd*, 2011 WL 674024, at *15 (D. Conn. Feb. 17, 2011) (denying summary judgment in part because "[d]epending on how a jury resolved the factual dispute[,] . . . it might reasonably conclude that [defendant officer] used excessive force at the moment when he grabbed [plaintiff] by the left arm, pulled her, and used his hands and body to guide her into the police car[.]"). Because a jury could conclude that Officer Ashe used an unreasonable amount of force during the December 20, 2016 traffic stop, Defendants' motion for summary judgment on Plaintiff's excessive force (Count One) claim is DENIED.

### C. Whether the City is Entitled to Judgment as a Matter of Law on Plaintiff's *Monell* Claim (Count Two).

In his municipal liability claim against the City, Plaintiff alleges that the City, "acting through the Rutland City Police Department and Officer Ryan Ashe, had in effect policies, practices, and customs that condoned and fostered the unconstitutional conduct of . . . Officer Ryan Ashe, and were a direct and proximate cause of the damages suffered by [Plaintiff]." (Doc. 1 at 5, ¶ 20.) He contends that Officer Ashe had been disciplined by his previous employer "for abusive behavior towards civilians" such as "draw[ing] his weapon and point[ing it] at people so many times he can't even recall[,]" and that the City was aware of Officer Ashe's practice of brandishing his firearm due to his use of force forms. (Doc. 30 at 4.) Defendants respond that Plaintiff's claim against the City must be dismissed because Plaintiff failed to "specify the overt acts relied upon as a basis for the claim that a pattern of unconstitutional actions exists and that senior officials of the town knew of the unconstitutional actions and encouraged their repetition by inaction." (Doc. 23 at 9-10) (internal quotation marks omitted).

Under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), a municipality may be liable for the unconstitutional actions of its employees if the deprivation of the plaintiff's rights is caused by a "governmental custom, policy, or usage of the municipality." *Jones*

*v. Town of E. Haven*, 691 F.3d 72, 80 (2d Cir. 2012). "Absent such a custom, policy, or usage, a municipality cannot be held liable on a *respondeat superior* basis for the tort of its employee." *Id.* Plaintiff must "prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007) (internal quotation marks omitted). "At a minimum the pleader must specify the overt acts relied upon as a basis for the claim that a pattern of unconstitutional actions exists and that the senior officials of the town knew of the unconstitutional actions and encouraged their repetition by inaction." *Smith v. Ambrogio*, 456 F. Supp. 1130, 1137 (D. Conn. 1978).

To the extent Plaintiff premises his claim on the City's failure to train or supervise, such failure "may constitute an official policy or custom [only] if the failure amounts to 'deliberate indifference' to the rights of those with whom the city employees interact." *Wray*, 490 F.3d at 195. "To establish deliberate indifference a plaintiff must show that a policymaking official was aware of constitutional injury, or the risk of constitutional injury, but failed to take appropriate action to prevent or sanction violations of constitutional rights." *Jones*, 691 F.3d at 81.

> A pattern of similar constitutional violations by untrained employees is "ordinarily necessary" to demonstrate deliberate indifference for purposes of failure to train [or supervise because] [w]ithout notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights.

*Connick v. Thompson*, 563 U.S. 51, 62 (2011) (quoting *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 409 (1997)). "[W]hen city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program." *Id.*

In order to succeed on his *Monell* claim, Plaintiff must first "identify obvious and severe deficiencies" in the policies of the Rutland City Police Department and "show a causal relationship" between those deficiencies and his alleged constitutional

13

deprivations. *Reynolds v. Giuliani*, 506 F.3d 183, 193 (2d Cir. 2007). Plaintiff alleges that the City knew of Officer Ashe's tendency to use unreasonable force and failed to intervene. Defendants counter that Plaintiff establishes no complaints against Officer Ashe for excessive force during his tenure at the Rutland City Police Department.

At the summary judgment phase, Plaintiff cannot rest on bare allegations that Officer Ashe was "disciplined by his former employer for abusive behavior towards civilians" and that he has "drawn his weapon and pointed [it] at people so many times that he can't even recall." (Doc. 30 at 4); *see Smith*, 456 F. Supp. at 1137 (recognizing "[t]he standard for municipal liability predicated on inaction of senior personnel must be frankly acknowledged as difficult to meet[] . . . unless there is a sufficient factual basis to justify the extensive litigation that such a claim entails."). Moreover, in general "a plaintiff cannot establish municipal liability solely by inference from evidence of the occurrence of the incident in question[,]" *Bourn v. Town of Bennington*, 2012 WL 2396875, at *3 (D. Vt. June 25, 2012), rather Plaintiff must proffer admissible evidence of other incidents that placed the City on notice. *See Walker v. City of New York*, 63 F. Supp. 3d 301, 311-12 (E.D.N.Y. 2014) ("When there is only one instance of the particular constitutional violation alleged by a plaintiff, it will ordinarily be insufficient to state a failure to supervise claim[,]" and granting motion for summary judgment when "the alleged unconstitutional conduct was limited to the actions" challenged in that case and plaintiffs had not "identified any additional, similar examples of unconstitutional practices beyond the events they complain[ed] of").

"[I]solated acts of excessive force by non-policymaking municipal employees are generally not sufficient to demonstrate a municipal custom, policy, or usage that would justify municipal liability." *Jones*, 691 F.3d at 81. Here, Plaintiff fails to establish that the City had an official policy or custom that caused Plaintiff to be deprived of a constitutional right. Defendants' motion for summary judgment on Plaintiff's *Monell* claim against the City is GRANTED and Count Two is DISMISSED.

## CONCLUSION

For the foregoing reasons, the court GRANTS IN PART AND DENIES IN PART Defendants' motion for summary judgment. (Doc. 23.) Summary judgment is DENIED with regard to Count One and GRANTED as to Count Two.

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 8th day of January, 2019.

Christina Reiss, District Judge
United States District Court